# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Vershell Reynolds, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Carolina Health Centers, Inc., ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. 8:18-cv-177-TMC <br><br> **ORDER** |

On January 22, 2018, Plaintiff Vershell Reynolds ("Plaintiff") brought this action against her former employer, Defendant Carolina Health Centers, Inc. ("Defendant"), alleging racial discrimination and retaliation in violation of 42 U.S.C. § 1981; racial discrimination, retaliation and hostile work environment claims in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and state law claims for breach of contract and breach of contract accompanied by a fraudulent act. (ECF No. 1 at 5-12). On October 4, 2018, Defendant filed a motion for summary judgment. (ECF No. 27). On November 2, 2018, Plaintiff filed a response in opposition to the motion to dismiss (ECF No. 30), to which Defendant filed a reply on November 9, 2018, (ECF No. 33).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to a magistrate judge for pretrial handling. On January 31, 2019, the magistrate judge issued a Report and Recommendation (the "Report")

recommending that Defendant's motion for summary judgment be granted. (ECF No. 38). Plaintiff filed objections to the Report on February 11, 2019, (ECF No. 39), to which Defendant filed a reply on February 25, 2019, (ECF No. 41).

**I. Factual and Procedural Background**

Plaintiff, who is African American, began working for Defendant in November 2012. (ECF Nos. 27-2 at 4; 27-3 at 1). Plaintiff's initial job title was "Pharmacy Tech I" and her initial hourly rate of pay was $13.00. (ECF No. 27-2 at 4). She had previously applied to work as a pharmacy technician for Defendant but was told she had to obtain her certification to be eligible for the job. (ECF Nos. 27-2 at 4). Plaintiff obtained her state pharmacy technician certification in March 2012. (ECF No. 1 at 2).

Defendant internally classifies its pharmacy tech positions as Pharmacy Tech I, II or III, with Pharmacy Tech I serving as an entry-level position. (ECF No. 27-3 at 10).[1] There is also a "Certified Pharmacy Tech" position but only two employees, according to Defendant, fell within this classification. *Id.* According to Defendant, most Pharmacy Techs are certified as well. *Id.*

In December 2012, Defendant hired Phillip Driggers, who obtained his certification in 2008, and Michelle Millwood, who had been certified since 2001.

---

[1] Generally speaking, pharmacy technicians "assist the pharmacist in performing all routine tasks and in managing and coordinating all aspects of the Pharmacy Department." (ECF No. 27-3 at 12,14).

(ECF Nos. 27-2 at 4; 27-3 at 3). Driggers and Millwood, both Caucasian, were issued identification badges bearing the title "Certified Pharmacy Technician" and were paid at a higher rate than Plaintiff. (ECF Nos. 27-1 at 9; 27-2 at 4). Plaintiff noticed that Driggers and Millwood had badges displaying the job title of "Certified Pharmacy Technician" while hers displayed the "Pharmacy Tech I" job title. (ECF No. 27-2 at 4-5). Plaintiff also noticed these same classifications while browsing through a binder containing the names and job titles of all Defendant's employees. *Id*. at 5. Plaintiff asked Domenic Mellette, the Pharmacist in Charge, why she was not classified the same as Driggers and Millwood, and Mellette referred her to the Human Resources Department ("HR").

In the late spring or summer of 2013, Plaintiff met with Benjamin Kelly ("Kelly"), who was employed by Defendant in HR, to determine why Driggers and Smallwood were classified differently and paid more than Plaintiff. *Id*. at 5-6. Kelly determined from employment records that Plaintiff was not receiving the correct amount of pay for a certified technician and "was not even listed as a certified technician" even though Defendant possessed "copies of her certification" and her performance was on par with her coworkers. (ECF No. 31 at 5, 14). Kelly met with Louie Brown ("Brown"), head of the Pharmaceutical Department, who then met with Plaintiff and authorized a modest raise of .50 per hour and reclassified her as a Pharmacy Tech II. (ECF Nos. 27-2 at 6; 31 at 5). When Plaintiff asked Brown

3

whether she would be getting back pay from her date of hire, he stated "I can't believe you asked me that." (ECF No. 27-2 at 6).

According to Defendant, there were only two employees officially classified as a "Certified Pharmacy Technician." (ECF No. 27-3 at 10). Plaintiff was paid *more* than some Caucasian Pharmacy Techs and *less* than some African American Pharmacy Techs. *Id*. at 2-3. She received several incremental raises during her employment with Defendant, eventually reaching an hourly wage of $14.80 in 2015. (ECF No. 27-2 at 12).[2]

On November 20, 2015, Plaintiff accepted a position as Operations Technician I at Colgate-Palmolvie Company with an initial hourly wage of $17.10. (ECF Nos. 33-1; 33-2). On November 24, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated against her on the basis of race, retaliated against her, and subjected her to a hostile work environment based on her race. (ECF No. 27-3 at 5). Plaintiff gave written notice to Defendant that she was "resigning [her] position as a pharmacy technician" and that her last day of work would be on December 31, 2015. (ECF No. 27-2 at 42).

---

[2] Defendant claims that she was making $15.18 per hour at the time of her separation from the company. (ECF No. 27-3 at 2).

4

The EEOC transferred Plaintiff's Charge of Discrimination to the South Carolina Human Affairs Commission ("SCHAC"), which dismissed Plaintiff's charges and issued a notice of the right to sue. (ECF No. 27-3 at 36). On November 2, 2017, the EEOC adopted the SCHAC's findings and likewise dismissed the charges and issued a notice of the right to sue. *Id*. at 37.

Plaintiff filed this action on January 22, 2018, alleging that Defendant discriminated against her by engaging in a pattern and practice of targeting Plaintiff by subjecting her to less pay and job status and a lower position classification" than "her similarly situated Caucasian colleagues," in violation of both 1981 and Title VII, (ECF No. 1 at 5, 7); that Defendant retaliated against her on account of her protected activity, in violation of both 1981 and Title VII, (ECF No. 1 at 6, 8); that Defendant subjected Plaintiff to a racially hostile work environment, in violation of Title VII, (ECF No. 1 at 12); that Defendant breached an employment contract with Plaintiff by subjecting her to discrimination in contravention of the policies set forth in Defendant's Employee Handbook (ECF No. 1 at 9-11); and that Defendant's alleged breach of contract was accompanied by fraudulent acts (ECF No. 1 at 11). Additionally, Plaintiff alleges that Defendant's conduct caused her to leave and amounted to "constructive termination" of her employment. (ECF No. 1 at 6, 7, 9, 11).

Defendant moved for summary judgment, arguing that Plaintiff's constructive discharge claim is barred for failure to exhaust administrative remedies, (ECF No. 27-1 at 5); that each of Plaintiff's claims is barred by the applicable statute of limitations, *id*. at 6-8; and that, to the extent that any of her claims are not barred by the applicable limitations period, Plaintiff cannot establish a prima facie case as to any of the claims on this record, *id*. at 8-16.

As to Plaintiff's 1981 claims, the magistrate judge determined that "any claim based on actions occurring before January 22, 2014, is barred by the four-year statute of limitations applicable to 1981 claims." *Id*. at 9. The magistrate judge then found that the only remaining timely allegations with respect to Plaintiff's 1981 claim "relate to her purported constructive discharge." *Id*. at 10. In so finding, the magistrate judge noted that "Plaintiff seems to concede that, with respect to her 1981 . . . claims, the allegations other than her constructive discharge are time barred." *Id*. at 9. The magistrate judge then found that "Plaintiff has directed the Court to no evidence from which a reasonable jury could conclude that Defendant tried to get Plaintiff to quit her job." *Id*. at 20. The Report recommends, therefore, that the court grant summary judgment as to the 1981 claim; Plaintiff did not object to this recommendation.

With respect to Plaintiff's two contract causes of action, the magistrate judge first concluded that "any claim based on actions occurring before January 22, 2015,

is barred by the three-year statute of limitations applicable to contract claims." *Id*. at 9. The magistrate judge then found that, like the 1981 claims, the only remaining "timely allegations under Plaintiff's . . . contract claims relate to her purported constructive discharge," *id*. at 10, also noting that "Plaintiff seems to concede that with respect to her . . . contract claims, the allegations other than her constructive discharge are time barred." *Id*. at 9. As for the merits of Plaintiff's contract claims, the magistrate judge concluded that the contract claims fail because there was no evidence in the record that would establish Plaintiff's "employment was anything other than at-will." *Id*. at 21. Thus, the Report recommends that the court grant summary judgment as to both contract claims. Plaintiff filed an objection to the magistrate judge's recommendation that summary judgment be granted, but Plaintiff did not object to the conclusion that the only *timely* allegations under Plaintiff's contract causes of action relate to her purported constructive discharge. Plaintiff likewise did not specifically object to the conclusion that she was an at-will employee.

Turning to Plaintiff's Title VII claims, the magistrate judge determined that because Plaintiff filed the EEOC Charge of Discrimination on November 24, 2015, any Title VII claim based on employment actions occurring before January 28, 2015, is untimely. *Id.* at 10. Nonetheless, the magistrate judge found that Plaintiff's allegation that she was compensated less based on her race was timely under the

7

Lilly Ledbetter Act, 42 U.S.C. § 2000e-5(e)(3)(A). *Id.* at 11. The magistrate judge further determined that, to the extent that Plaintiff asserts Defendant violated Title VII on a constructive discharge theory, such a claim is barred because Plaintiff's Charge of Discrimination submitted to the EEOC and the SCHAC did not include allegations of constructive discharge. *Id*. at 7, 10. Plaintiff did not object to these conclusions.

As to the merits of the remaining Title VII allegations, the magistrate judge applied the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *Id.* at 12-13. Under this framework,

> the plaintiff must first establish a prima facie case of discrimination, the defendant may respond by producing evidence that it acted with a legitimate, nondiscriminatory reason, and then the plaintiff may adduce evidence showing that the defendant's proffered reason was mere pretext and that race was the real reason for the defendant's less favorable treatment of the plaintiff.

*Williams v. Staples, Inc*., 372 F.3d 662, 667 (4th Cir. 2004). The magistrate judge assumed the Plaintiff could establish a prima facie case of racial discrimination but found that "Defendant has articulated a legitimate, nondiscriminatory and nonretaliatory reason for Plaintiff's wages." (ECF No. 38 at 13-14). The magistrate judge highlighted Defendant's explanation that Plaintiff's starting wage was less than that of Driggers and Millwood because Plaintiff's "only previous pharmacy experience was as a non-certified pharmacy tech who could not perform all of the duties expected of a Pharmacy Tech" while Driggers had been a certified pharmacy

technician since 2008 and Millwood since 2001. *Id*. at 15. The magistrate judge then concluded that Plaintiff had failed to come forward with sufficient evidence to support the conclusion that Defendant's nondiscriminatory and nonretaliatory reason was mere pretext, noting that Plaintiff's salary fell within the compensation range for all Defendant's certified pharmacy technicians, that she was considered a certified technician regardless of the title on her ID badge, and that there was a white certified technician making less money than Plaintiff. *Id*. at 16.

Finally, the magistrate judge concluded that Plaintiff failed to point to sufficient evidence to support a finding of a hostile work environment based on race, as she "provided no explanation or legal analysis regarding how any complained-of conduct was because of [her] race" and failed to demonstrate conduct that "was sufficiently severe or pervasive to create an abusive atmosphere and alter the conditions of employment." *Id.* at 18. The magistrate judge recommended, therefore, that the court grant summary judgment on Plaintiff's Title VII claims.

## II. Standards of Review

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact *Anderson v. Liberty Lobby. Inc*., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails

9

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc*., 915 F.2d 121, 123-24 (4th Cir. 1990).

The magistrate judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co*., 416 F.3d 310, 315 (4th Cir. 2005).

### III. Discussion

**A. Plaintiff's Objections Relating to Her Title VII Claims**

First, Plaintiff contends that she has created genuine issues of material fact "in support of her allegations of pretext with respect to her Title VII claims related to unlawful pay differential and job classification between herself and her similarly

situated Caucasian comparators." (ECF No. 39 at 3). Second, Plaintiff argues that she has raised genuine issues of material fact with respect to her claim for constructive discharge. *Id.* Plaintiff does not object to the magistrate judge's conclusion and recommendation regarding her hostile work environment claim under Title VII. Having carefully reviewed the record, the court finds no error in the magistrate judge's determination that Defendant is entitled to summary judgment on the hostile work environment claim.

1. **Pay Differential and Job Classification**

As previously noted, the magistrate judge concluded that Plaintiff failed to produce evidence to rebut Defendant's "legitimate, nondiscriminatory and nonretaliatory reason for Plaintiff's wages." (ECF No. 38 at 13-14). Specifically, the magistrate judge found that "Plaintiff has failed to put forth any evidence to suggest that she was paid less because of her race or that Defendant based its employees' hourly wages on anything other than their certifications and experience." *Id*. at 16. The magistrate judge further found that the record established that Plaintiff's salary fell within the compensation range for all Defendant's certified pharmacy technicians and that she was considered a certified technician regardless of the title on her ID badge. *Id*.

Plaintiff argues that the magistrate judge failed to account for the deposition testimony of Benjamin Kelly ("Kelly") who was employed in Defendant's Human

Resources Department during the time Plaintiff worked for Defendant. (ECF No. 39 at 4). Kelly testified that in May or June 2013, after Plaintiff first met with him, he determined from employment records that Plaintiff "was not receiving the initial pay of a certified technician" and "was not even listed as a certified technician" even though Defendant possessed "copies of her certification" and her performance was on par with her coworkers. (ECF No. 31 at 5, 14). Kelly subsequently updated the system to reflect that Plaintiff was a certified technician. *Id*. at 6. Kelly indicated that Plaintiff was not receiving the correct amount of pay as compared to co-workers who "had her same job title." *Id*. at 7. Kelly further testified that he was concerned "not only [with] the fact that [Plaintiff] wasn't being paid [correctly]" but also with "the way [Louie Brown] was responding to her concern" in a "hostile" manner that disparaged her work performance. *Id*. at 14.[3] Finally, Kelly testified that, while looking into Plaintiff's complaint, he determined that the rate of pay was off for two other African American employees in comparison to other employees of the same experience, date of hire, and education. *Id.* at 10. Kelly testified that he did not "know the motivation behind" these discrepancies in pay but he "could see where it could come across" as racially motivated. *Id*. at 8.

---

[3] In recounting his discussions with Brown about Plaintiff's pay, Kelly testified that "[h]is words were hostile and they did not match what was documented in her file in comparison to" the files of Plaintiff's "Caucasian counterparts." (ECF No. 31 at 14).

It is Plaintiff's burden to "adduce evidence showing that the defendant's proffered reason was mere pretext and that race was the real reason for the defendant's less favorable treatment of the plaintiff." *Williams*, 372 F.3d at 667. In order "to survive summary judgment, a plaintiff must demonstrate a genuine dispute of material fact on the question of pretext sufficient to make [the employer's] proffered justification a triable issue." *Guessous v. Fairview Prop. Invs*., LLC, 828 F.3d 208, 217 (4th Cir. 2016). The court concludes that Plaintiff has met this burden via the foregoing testimony from Kelly, a former HR representative for Defendant, who contradicted Defendant's position that, regardless of what her ID badge stated, Plaintiff was properly classified as a certified technician and received the appropriate, scheduled initial rate of pay. Plaintiff has adduced sufficient evidence at this point to permit a trier of fact to find Defendant's explanation pretextual.

Finally, the court notes that the magistrate judge assumed, but did not decide, that Plaintiff could establish a prima facie case of Title VII discrimination. (ECF No. at 13 n.9). "The elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment [of] similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom*., *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). The court has carefully considered the record and

concludes that plaintiff has come forward with sufficient evidence to establish a prima facie case of discrimination. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). Accordingly, the court concludes the evidence in the record is sufficient to survive summary judgment on her Title VII race discrimination claim.

Although the court reaches the same conclusion with respect to Plaintiff's Title VII retaliation claim, Plaintiff's initial compensation rate and her rate of pay prior to the time she first engaged in protected activity are not cognizable adverse employment actions as she must prove that "a causal connection exists between the protected activity and the adverse action." *See Guessous*, 828 F.3d at 217. Plaintiff produced evidence that after she first alerted Defendant to the disparate pay, and even after she was given a small raise of .50 cents per hour, she continued to be compensated at a rate less than other similar certified technicians. (ECF No. 31 at 6). Conceivably, a trier of fact could find Defendant engaged in retaliatory conduct based on such evidence, albeit thin.

## 2. Constructive Discharge

As for Plaintiff's claim that she was constructively discharged in violation of Title VII, Plaintiff argues that the magistrate judge "wrongfully used [Plaintiff's]

new job against her with respect to her claim for constructive discharge" and that the fact that Plaintiff obtained new employment was evidence of the discriminatory treatment she was receiving from Defendant. (ECF No. 39 at 5). Plaintiff, however, fails to address the conclusion of the magistrate judge that Plaintiff's allegations that she was constructively discharged in violation of Title VII "are procedurally barred because they are outside of the scope of the [EEOC] Charge." (ECF No. 38 at 5-8). The court has reviewed the record and finds this objection to be without merit.[4]

## B. Plaintiff's Objections Relating to Her Contract Claims

---

[4] It appears that Plaintiff's objection regarding her constructive discharge allegations relates only to her Title VII claim. (ECF No. 39 at 3). To the extent that Plaintiff intended this objection to apply to her § 1981 claim as well, the court finds it meritless. In order to prove constructive discharge, an employee must prove the "employer deliberately ma[de] the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc*., 383 F.3d 180, 186–87 (4th Cir. 2004) (internal quotation marks and citations omitted). Thus, Plaintiff must demonstrate (1) "the deliberateness of [the employer's] actions, motivated by racial bias" and (2) "the objective intolerability of the working conditions." *Id*. This "intolerability" standard governing constructive discharge claims is more stringent than the "severe and pervasive" standard for hostile work environment claims. *See Amirmokri v. Balt. Gas & Elec. Co*., 60 F.3d 1126, 1133 (4th Cir. 1995)

The magistrate judge found (1) "no evidence from which a reasonable jury could conclude that Defendant tried to get Plaintiff to quit her job" and (2) that since "Plaintiff has not established a claim for hostile work environment" she "cannot meet the heightened standard required" to show intolerability. (ECF No. 38 at 20). Plaintiff's objections do not address these conclusions. The court has reviewed the record and likewise finds no evidence suggesting the type of intolerable conditions required for a constructive discharge claim.

Plaintiff contends that she has presented genuine issues of material fact such that her contract-based claims should be allowed to proceed to a jury. She fails, however, to address the basis for the Report's dispositive ruling—that there was no evidence in the record that would establish Plaintiff's "employment was anything other than at-will." *Id*. at 21.

South Carolina recognizes "the doctrine of at-will employment in which either an employer or employee can sever their relationship for any reason or no reason without the severing party being liable to the other for breach of contract." *Anthony v. Atl. Grp., Inc.*, 909 F. Supp. 2d 455, 466 (D.S.C. 2012). The distribution of an employee handbook can alter the at-will status of an employee, *id*. (citing *Small v. Springs Indus., Inc.*, 357 S.E.2d 452, 455 (S.C. 1987), but it does not do so automatically, *id*. at 467. Plaintiff must show that the handbook includes "enforceable promises stated in mandatory language." *Id*. Thus, in order "to establish an implied contract for employment, the policy manual language 'must be definitive in nature, promising specific treatment in specific situations.'" *Id.* (quoting *Hessenthaler v. Tri–Cnty. Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005)).

In her objections, Plaintiff merely states that the magistrate judge "correctly surmises that . . . a handbook and other documents can establish a contract claim in South Carolina." (ECF No. 39 at 6). Plaintiff makes no attempt to direct the court

to any operative provisions in the handbook or policy manual stating promises in mandatory language that the court construe to alter Plaintiff's presumptive at-will status. In fact, Plaintiff testified during her deposition that she was unable to point to any document establishing a contract between her and Defendant. (ECF No. 27-2 at 14). The court has reviewed the record and finds this objection to lack merit.

### IV. Conclusion

Accordingly, as set forth above, the court adopts in part the magistrate judge's Report (ECF No. 38) and **GRANTS** Defendant's motion for summary judgment (ECF No. 27) as to the following claims: Plaintiff's hostile work environment claim under Title VII; Plaintiff's claim that she was constructively discharged in violation of Title VII; all of Plaintiffs claims under § 1981; and Plaintiff's claims for breach of contract and breach of contract accompanied by a fraudulent act.

The court declines to adopt the part of the Report which recommends granting summary judgment as to the remainder of Plaintiff's Title VII claims and, therefore, **DENIES** Defendant's motion for summary judgment (ECF No. 27) as to Plaintiff's Title VII disparate treatment and retaliation claims as concerns Plaintiff's rate of compensation.

**IT IS SO ORDERED.**

                                              s/Timothy M. Cain
                                              United States District Judge

August 20, 2019
Anderson, South Carolina